# CIRCUIT COURT OF THE CITY OF NORFOLK

Suburban Grading
and Utilities, Inc.

    v.

Transportation District
Commission of Hampton Roads
d/b/a Hampton Roads Transit

May 14, 2009

Case No. (Civil) CL08-2640

BY JUDGE CHARLES E. POSTON

In this action the plaintiff, Suburban Grading & Utilities, Inc., challenges the decision of the defendant, Transportation District Commission of Hampton Roads, doing business as Hampton Roads Transit (HRT), rejecting plaintiff's response to HRT's invitation for bids for the construction of a railway right of way from Harbor Park to the Eastern Virginia Medical Center in the City of Norfolk. Finding the plaintiff's bid to be nonresponsive and nonresponsible, the Court will dismiss the amended complaint.

*Facts and Procedural History*

Hampton Roads Transit provides public transportation services to the cities of Chesapeake, Hampton, Newport News, Norfolk, Suffolk, and Virginia Beach, and is now developing a light rail public transportation system for the City of Norfolk. In 2007, HRT began the process of procuring general contractors to construct various portions of this system. HRT's invitation for

bids (IFB) for Contract No. LR-46404, issued on November 5, 2007, sought bidders to perform all public utility work, track construction, traffic signs, and pavement markings for a 2.4-mile section of the project from Harbor Park to Eastern Virginia Medical School in downtown Norfolk.

HRT entered into a full funding and grant agreement with the United States Department of Transportation, Federal Transit Administration, to obtain financial assistance for HRT's construction of the light rail system. Because the light rail project is funded with both state and federal funds, both state and federal regulations govern HRT's procedures for employing contractors to work on the project. The Virginia Public Procurement Act (VPPA) prescribes the competitive bidding process described in the IFB. The following provisions of the light rail IFB are pertinent to the action *sub judice*:

1. Contractors were required to submit their bids on or before 10:00 a.m., January 25, 2008.

2. A disadvantaged business enterprise (DBE) participation goal of 24% was prescribed. *As a matter of responsibility*, each general contractor had to either meet this DBE goal or exert good faith efforts toward meeting it.

3. *As a matter of responsiveness*, all bids had to include evidence of having either met the 24% DBE goal or exercised good faith efforts toward that goal.

4. The contract was to be awarded to the lowest bidder submitting a bid that was *both responsive and responsible*.

Three prime contractors responded to the IFB. Suburban Grading & Utilities, Inc., submitted the lowest bid of the three, totaling $42,093,140.70. The other two bidders, Skanska USA Civil Southwest, Inc., and T. A. Sheets Mechanical Contractors, Inc., bid $42,415,442.87 and $44,816,167.00, respectively. Both Skanska's and T. A. Sheets' bid packets documented compliance with the 24% DBE participation goal. While Suburban's bid was the lowest, it reflected a DBE participation rate of only 1.82%, less than one-thirteenth of the 24% IFB requirement. Moreover, Suburban failed to include evidence of DBE good faith efforts, which, according to the IFB, must accompany any bids failing to meet the 24% goal.

On January 29, 2008, four days after the bids were due, Suburban submitted its DBE good faith efforts evidence to Sharon Foster, HRT's DBE Officer. Suburban also informed Deborah Purcell, HRT's contract administrator, that Suburban had communicated with Ms. Foster and offered to provide Ms. Purcell a copy of the good faith efforts evidence it was forwarding to Ms. Foster. Although Ms. Purcell did not specifically authorize the late submission, she did refer Suburban to the IFB section that analyzed

the evidence demonstrating good faith efforts. Significantly, however, the section of the IFB referenced by Ms. Purcell also provided that no late good faith efforts evidence would be accepted.

On February 7, 2008, Ms. Purcell informed Suburban that its bid was deemed neither responsive nor responsible and was, therefore, ineligible to be awarded the contract. HRT's decision was based upon its conclusion that Suburban had neither met the 24% DBE goal, a finding that neither party challenges, nor submitted evidence of good faith efforts to meet the DBE goal. HRT further advised Suburban that, if it considered "this determination to be incorrect, a request for good faith effort reconsideration may be initiated in accordance with the attached guidance." Ms. Purcell also advised Suburban to contact her if further information were required.

On February 8, 2008, the day following the rejection notification, George Booker, Jr., Esquire, representing Suburban, spoke to Ms. Purcell by phone. They later met in Ms. Purcell's office to discuss the reconsideration process. One week later, on February 15, 2008, Suburban submitted a letter to Keisha Branch, HRT's designated reconsideration official, referencing "Suburban's Good Faith Efforts Reconsideration and Informal Meeting Request." Suburban's letter did not request reconsideration of HRT's finding that Suburban's bid was nonresponsive for not including appropriate good faith efforts evidence with its bid; rather, Suburban addressed only the responsibility issue of whether Suburban exercised good faith efforts to meet the DBE goal. Shortly after Ms. Branch received Suburban's reconsideration request, HRT's procurement officer advised her that her review of the request would be unnecessary because HRT had initially deemed Suburban's bid to be neither responsive nor responsible. Had Suburban prevailed in a reconsideration of the responsibility issue, its bid would nevertheless have remained nonresponsive and, therefore, unacceptable. The IFB's directive that a bid must be both responsive and responsible before it could be awarded the contract was unambiguous.

Because HRT found that Suburban was not a responsive bidder, it denied Suburban's request for reconsideration on February 28, 2008. Suburban responded by filing its protest of HRT's decision on March 7, 2008, which HRT denied on April 15, 2008. Suburban then commenced this action on April 24, 2008.

Soon after this litigation commenced, HRT convened a public hearing concerning a proposed "Determination to Proceed Without Delay" on the disputed section of the light rail project. At the conclusion of the hearing on May 15, 2008, HRT affirmed its earlier determination that Skanska was the lowest bidder submitting a responsive and responsible bid and awarded

Skanska the light rail contract. On June 13, 2008, HRT issued Skanska a "Notice to Proceed," and, as of the date of this writing, Skanska continues to work on the project. Suburban's claim against HRT was tried in Norfolk Circuit Court on December 16 and 17, 2008, after which the parties submitted post-trial memoranda for the Court's consideration.

*Discussion*

A. *Responsiveness of Suburban's Bid*

The IFB required all bids to contain formal written evidence of either 24% DBE subcontractor participation or, alternatively, evidence that the bidder attempted, in good faith, to meet the 24% DBE subcontractor goal. Suburban had to comply with the DBE provisions of the IFB before its bid could be considered both responsible and responsive, and therefore eligible to be awarded the HRT contract. The terms *responsive* and *responsible* assume specific statutory definitions when they appear in an IFB for a public contract in Virginia:

> "*Responsible bidder*" . . . means a person who has the capability, in all respects, to perform fully the contract requirements and the moral and business integrity and reliability that will ensure good faith performance. . . .
> "*Responsive bidder*" means a person who has submitted a bid that conforms in all material respects to the Invitation to Bid.

Va. Code § 2.2-4301 (2008).

Suburban concedes that it only reached 1.82% DBE participation and, therefore, failed to meet the DBE requirement of the IFB. Suburban also admits that its bid, as initially submitted, failed to contain appropriate evidence of good faith efforts to cure the significant DBE shortfall. The Court finds that Suburban was familiar with the DBE requirements when submitting its bid to HRT; further, Suburban knew that its bid did not comply with the terms of the IFB. Indeed, it appears that Suburban initially expected HRT to reject its bid as being nonresponsive.

Not only did Suburban fail to submit the proper good faith efforts evidence, it instead included irrelevant, misleading, and confusing DBE information. One of the DBE firms Suburban listed on Form B, Westcon, is not a DBE at all; rather, it is a WBE (women's business enterprise). Suburban's estimator, Robert S. Steele, included Westcon because he felt "our [DBE] percentage was so pitifully low."

Suburban claims that it omitted good faith efforts paperwork from its bid because, on the day before the IFB's closing, Suburban's anticipated primary DBE subcontractor, G. W. Peoples, submitted a bid that Suburban deemed to be unacceptably high. Had Suburban used G. W. Peoples as its subcontractor, Suburban would have actually attained 33.96% DBE participation. Suburban explains that, as a result of the last-minute decision not to utilize G. W. Peoples, it lacked the necessary time to compile the required good faith efforts information.

The credible evidence does not support Suburban's claim that the G. W. Peoples bid was unacceptably high. Suburban had internally budgeted nine million dollars for rail work, and G. W. Peoples bid $8,828,268. Even though G. W. Peoples' bid exceeded the amount bid by Delta Railroad, the non-DBE subcontractor Suburban selected, G. W. Peoples' bid included more work than Delta. For example, G. W. Peoples' bid included track embedding; Delta's bid did not. The comparison between the two on a dollar-to-dollar basis is, then, an inappropriate comparison.

Assuming *arguendo* that Suburban discovered the day before bid opening that G. W. Peoples' bid was unreasonable, no IFB provision would excuse Suburban's failure to include good faith efforts evidence with its bid. The Court finds that Suburban's bid did not contain the required documentation regarding good faith efforts at the time the bids were opened and was, therefore, nonresponsive.

## B. *HRT Did Not Waive the Nonresponsiveness of Suburban's Bid*

HRT could not accept a nonresponsive bid unless, in HRT's discretion, a determination was made that the omission was immaterial. Suburban asserts that, because its omission of good faith efforts information was an informality, HRT could have waived the nonresponsiveness of the bid. Suburban further claims that HRT exercised its option to waive Suburban's nonresponsiveness through the actions of its employees in accepting and evaluating Suburban's good faith efforts materials. The Court disagrees.

Suburban claims that it received confusing and conflicting signals from HRT after the bid closing and that it reasonably interpreted these communications as permission for late submission of good faith efforts materials. Not only did Suburban fail to follow the clear and unambiguous IFB instructions and submit the proper information for its bid to be considered responsive, but also it included extraneous information, such as inapplicable vendor profiles, on its Form B. This combination of missing information and superfluous incorrect information created confusion within HRT, causing HRT to contact Suburban in an effort to resolve that confusion.

On January 28, 2008, both Deborah Purcell (HRT's Contract Administrator) and Sharon Foster (HRT's DBE Compliance Officer) contacted Suburban to inquire about its bid packet. Purcell called Robert Steele, Suburban's vice president of estimating, who referred her to Chris Safrit, Suburban's point of contact for details on the bid. Purcell asked Safrit about the 1.82% DBE participation number to determine whether it was a mistake, clerical error, or misunderstanding.

Some of Purcell's confusion resulted from Suburban's attaching a Form B with several DBE profiles. If these were proposed subcontractors on the light rail project, they should have been listed on Form A. This discrepancy caused Purcell to question whether Suburban's bid submission may have inadvertently reflected its DBE status inaccurately. Purcell's questions therefore concerned *responsibility*, not *responsiveness*. While the intended meanings of the communications between Purcell and Safrit have been disputed, Suburban concedes that, at no time, did Purcell explicitly tell anyone at Suburban that it could submit late good faith efforts materials to HRT. Indeed, there was no question in Purcell's mind that Suburban's bid was nonresponsive as submitted. Based on the clear and unambiguous language of the IFB, there is no question in the Court's mind either.

Sharon Foster also contacted Suburban to clarify certain DBE information: first, Suburban's exceptionally low DBE participation; second, the missing good faith efforts section which should have accompanied such a low DBE percentage; and third, the purpose for which the various vendor profiles were attached to the bid. On January 28, 2008, Foster spoke to Steele, Suburban's vice president of estimating, who conceded at trial that, during their conversation, Foster neither asked him to submit late good faith efforts information nor told him that Suburban could submit such information late.

While admitting that, at the time of bid opening on January 25, 2008, its bid was nonresponsive, Suburban nevertheless asserts that HRT had the discretion to waive the nonresponsiveness because its deviation from the IFB was an informality. The VPPA defines an informality as "a minor defect or variation of a bid or proposal from the exact requirements of the [IFB] . . . which does not affect the price, quality, quantity, or delivery schedule for the goods, services, or construction being procured." Va. Code Ann. § 2.2-4301 (2008). Suburban further asserts that HRT, indeed, waived its nonresponsiveness by the actions of Purcell and Foster.

Suburban claims that not including good faith efforts evidence was not material because it did not affect the bid price. Suburban's position is inconsistent with the allegation in its amended complaint that it "expended a significant sum and devoted significant man-hours to respond to [Foster's

good faith efforts] request." It would be manifestly unjust to permit a bidder to submit DBE materials, including good faith efforts information, after the bids are opened. To do so would frustrate the entire procurement process prescribed in the VPPA.

The IFB is very clear: "Bidders *must* present the information required above on the forms provided herein, *as a matter of responsiveness, with their bid*." (HRT IFB, p. 22; Jt. Ex. 9.) Suburban's bid was nonresponsive, and, considering that the IFB mandated a DBE goal of 24%, it is inconceivable that it could be viewed as a "minor defect or variation of a bid or proposal from the exact requirements of the [IFB] . . . which does not affect the price, quality, quantity, or delivery schedule for the goods, services, or construction being procured." Va. Code § 2.2-4301. Thus, the Court holds that HRT had no discretion to waive the DBE submission requirements. Furthermore, the Court finds that, even if HRT could have waived that requirement, it did not.

## C. *Reconsideration Rights under 29 CFR § 26.53*

Suburban argues that, because the IFB solicited bids for a federally funded project, HRT had to comply with several federal regulations. One of these, 29 CFR § 26.53, prescribes procedures for evaluating good faith efforts. Suburban contends that it is entitled to reconsideration conducted by a party who was not involved in the initial decision and that it is further entitled to a personal meeting with the reviewing party. 29 CFR § 26.53(d) (2008). Upon a full reading of 29 CFR § 26.53 however, it becomes evident that the reconsideration mandate of paragraph (d) only applies to a determination of the *responsibility* of an initially *responsive* bid:

> (2) All bidders/offerors will be required to submit [either DBE or good faith efforts] information to the recipient, *at the time provided in paragraph (b)(3) of this section*:
> (3) At your discretion, the bidder/offeror *must* present the information required by paragraph (b)(2) of this section:
> (i) Under sealed bid procedures, *as a matter of responsiveness*. . . .

29 CFR § 26.53(b) (2008) (emphasis supplied). When considered in its entirety, 29 CFR § 26.53 grants HRT the discretion to determine the responsiveness of the bid with respect to DBE submissions. There is no requirement in the regulation that a nonresponsive bidder be granted any

reconsideration. The Court concludes that because Suburban's bid was nonresponsive, Suburban was not entitled to reconsideration under 29 CFR § 26.53(d).

D. *Administrative Reconsideration*

Suburban next argues that, under the provisions of the Best Practices Procurement Manual, it is entitled to an administrative reconsideration of HRT's rejection of its bid. Unfortunately for Suburban's position, the administrative review under the provisions of the Best Practices Procurement Manual applies only when the responsibility of a responsive bid is called into question. Page 30 of the Manual states:

> If it is determined that the apparent successful low bidders have failed to meet the requirements of the contract goal, good faith efforts, the Authority will provide them with ONE opportunity for administrative reconsideration, before the Authority awards the contract.

(Jt. Ex. 2.) Had HRT found that Suburban's bid was responsive but not responsible, Suburban would have been entitled to an administrative review of its responsibility regarding the DBE deficiency. This review is authorized only if the bidder is first found to have submitted a responsive bid, because any "apparent successful" bidder must have submitted a responsive bid. Suburban was not responsive and is, therefore, not entitled to administrative reconsideration.

Had Suburban been entitled to reconsideration of its good faith efforts, that reconsideration would have been conducted without the benefit of any information arriving after the bid submission deadline. "No new evidence of good faith efforts may be presented after the bid submission deadline." (Best Practices Procurement Manual; Jt. Ex. 2, p. 30.) HRT, then, could not have found Suburban to be a responsible bidder based on the original good faith efforts evidence because there was no such evidence for HRT to consider.

*Conclusion*

The Court will dismiss the amended complaint and grant the defendant its taxable costs.